## JAMES PRATT

### *v.*

## RUSSELL GRIMES.

AGENCY—*of the settlement between parties—fact of must be shown by a pre-ponderance of proof.* In a suit in chancery, for an accounting of the doings of the defendant, as the agent and trustee of the complainant, where the defense set up

was, that there had been a full settlement of all things between the parties : *Held,* that the fact of a settlement having been made, must be established by a preponderance of testimony, to justify the court in rendering a decree dismissing the bill for want of equity.

WRIT OF ERROR to the Superior Court of Chicago.

The opinion states the case.

Messrs. KNOWLTON & JAMIESON, for the plaintiff in error.

◦ Mr. GEORGE R. PAYSON, for the defendant in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court :

This was a bill in chancery, exhibited in the Kane County Circuit Court, in November, 1852, by James Pratt, against Russell Grimes, and the venue changed to the then Court of Common Pleas, now the Superior Court, of the City of Chicago, wherein a decree was rendered, at the September term, 1867, dismissing complainant's bill.

To reverse this decree, the record is brought here by writ of error, and the principal error assigned is, that subsequent to an interlocutory decree in favor of the plaintiff in error, and then in full force, referring the cause to a Master to take proof therein, and state an account between the parties, and which proofs were taken and account stated, as directed by the decree and reported to the court, by which there was stated and found due and owing from the defendant in error to the plaintiff in error, the sum of three thousand eight hundred and sixty-six 61-100 dollars, to which the defendant in error took no exception, the court dismissed the bill.

The record shows, on the coming in of the master's report, showing the above balance due complainant, the complainant excepted to it, for the reason no interest had been allowed

on this balance, he claiming that interest should have been allowed by the master from the date of filing the bill. The exceptions were not passed upon by the court, but, on the defendant's motion, the report was referred back to the master, so that he might give the reasons for his finding. This was at the October term, 1865. At the May term, 1866, the master filed a supplemental report, giving, in detail, the reasons, with the evidence on which he'relied.

At the September term, 1867, the cause was brought on for hearing, on the master's report, and the proofs taken in the cause, and argued at length by counsel, when a final decree was entered, dismissing the bill with costs.

It appears, the sole ground for dismissing the bill on the hearing, was, that in the judgment of the court, there had been a full settlement between the parties, and as the bill was brought for an account, there was no equity in it as against this proof of a settlement.

To this point we have alone directed our attention, for if there was a settlement, the court decided right, on the authority of the case of *Vermillion* v. *Bailey*, 27 Ill. 230.

This fact of settlement is one to be established by a preponderance of testimony. We have closely examined the testimony in the record on this point.

One of the complainant's witnesses, his brother, Amos Pratt, states that in June, 1852, defendant said that complainant had agreed to settle, but made an excuse that he could not, or would not until he saw certain papers. Another witness, Philemon B. Pratt, also a brother, says that defendant, in Nov., 1852, declared he would be willing to arbitrate if they could agree on the terms—he would not, however, if he had to stand any of the losses on the sheep. Otis Ashley, who was employed by complainant, about the 25th of June, 1852, to go with him to Dixon, after wool, says, they went to Eddy's farm, got the wool, and returned to Dixon, and next day found the defendant there. There was a dispute about the wool—defendant

claimed it.   Complainant said he had previously employed defendant as his agent, and had discharged him long ago.  He told defendant that to settle the matter, he might pick his own arbitrators, and they would bind themselves in a bond of one thousand dollars to abide their decision, and defendant might take the wool and do as he pleased with it.   Defendant declined the arbitration, alleging that the property was his, or that it had been left to arbitration before.   Ashley and complainant then started for home ; got as far as Oswego, when defendant came with the Sheriff and took the wool out of the wagon.   There were about 700 or 800 pounds of wool got of Eddy.   On his cross-examination, he said, defendant used the words that, he had nothing to settle—that the property was his.   Thinks defendant said, " I have nothing to settle.   We have settled before."   Thinks defendant claimed all the sheep and wool he had had of complainant.   Can't remember the language.   On the part of the defendant, who was examined as a witness before the master, and who had stated in his answer, that they had a settlement the last of May or first of June, 1852, in which a balance was found due defendant of three hundred and sixty-two 16-100 dollars, and he was to retain the sheep then in his hands, and in payment of the balance of $362.16. he was to have the 200 sheep then in the hands of Eddy, in Lee county, and two years' wool from them, and that he had sued complainant for this balance, and the two hundred sheep and six hundred pounds of wool taken by complainant out of his possession and control without his leave.   And in a most searching examination as a witness in the cause, he stated that he presented complainant with the account marked A, annexed to his answer, and that exhibit shows the items of account, and the above balance as due, $362.16.

Mary L. Pratt, the wife of P. B. Pratt, and sister-in-law of complainant, and sister of defendant, states in her deposition that she heard a conversation, about the last of May or first of

June, 1852, in relation to settling of the sheep business. Defendant got his papers and brought them down stairs, and showed them to complainant, and told him what he had done with his sheep business; showed his accounts, and heard him read over accounts to complainant. They talked very friendly, and both got up and went out. In two hours complainant came in, and I asked him if he and defendant were going to settle, and he said they had settled, and on her asking him how, he replied that he was to let defendant have what sheep he had got, and those out at Dixon, and that would pay him up.

The remaining item of testimony on this point, is what is denominated exhibit (1), the original of which is in the record, and it appears to be a fragment of a letter dated June 15th, 1852, addressed to Mr. Eddy, supposed to be N. H. Eddy, and seeming to be an order on Eddy, in favor of defendant, for the sheep and wool in his possession, but the letter is so fragmentary it cannot be read in full. A part of the signature, in a different hand-writing from the body of the letter, appears as "Jas."

P. B. Pratt says that this order or letter is in his hand-writing, and was signed by complainant. Does not know how it came to be partially burned. It was never delivered by him to defendant or any other person. It was lost by him, and probably taken by defendant, who was boarding at his house.

The above is all the evidence directly on the fact of a settlement, and we do not incline to the opinion of the superior court, that it preponderates in favor of the settlement, and for these reasons: P. B. Pratt swears that Grimes, in November, 1852, said he would be willing to arbitate if they could agree on the terms; he would not leave it out (to arbitrators,) and stand any of the losses on the sheep. How can this be reconciled with the fact of a settlement in May or June previous, as testified to by Mary L. Pratt, the sister of defendant? and how strongly it corroborates another portion of her testimony,

where she says in December, 1852, complainant came to our house and said he had the papers in his pocket, and told her he would settle up with defendant, if he would suffer half the losses of the whole matter, or would leave it to Mr. Joseph A. Churchill, a cousin of the defendant. Defendant came in the next morning, and she told him what complainant had said, to which defendant replied he wished he would. Complainant was eating breakfast; after breakfast she asked him, are not you and Russell, defendant, going to settle? He said, no; I'll be d——d if I will, unless he will suffer half of the losses of the old contract of the sheep, and mentioned the Tubb's contract and others. He said he would not leave it to Churchill, and then went off.

Now, how unreasonable it is, if these parties had settled in May or June previously, as Mrs. Pratt testified, that she should have asked such a question, for if they had settled in either of those months, she knew it, and it was impossible, almost, consistently with truth, she should have asked such a question. And when he replied, no, he would not, unless defendant would suffer half the losses of the old contracts, how natural it would have been for her, who appears to have taken a deep interest in this whole matter, to have said, in that familiar way in which she had accosted him, "Why, Jim, you told me last June you and Russell had settled, and you told me how, and it was that you was to let defendant have what sheep he had got, and those at Dixon, and that would pay him up." But not one word of reference to this appears, and it is so reasonable that it should have appeared.

As to the "burnt letter," (exhibit 1), its contents were not proved, and though signed by complainant, it was never delivered to defendant, nor is there any proof that it was designed to be. It is too imperfect to base a judgment upon.

We cannot think the evidence of a settlement at all satisfactory. According to Mrs. Pratt, it did not take the parties

two hours to settle matters involving thousands of dollars, requiring in their details close scrutiny, and the examination of a large number of vouchers, some of which, in the very nature of the transaction, required explanation, and the whole matter close examination. Men do not settle such important matters in this way, and the most that can be said about it, favorable to defendant, is, that at that time in May or June, the parties had talked about a settlement on the terms stated by complainant to Mrs. Pratt, but up to November and December, 1852, complainant expressed his determination not to settle, unless half the losses was assumed by defendant, and in December, as Mrs. Pratt states at that very time defendant said "he wished complainant would settle." This clearly implies they had not settled in the previous June.

We reverse the decree on the ground alone, that there is no sufficient proof of a settlement, and remand the cause.

*Decree reversed.*