Beugnot vs. Tremoulet.

---

## No. 13,106.

## MISS JOSEPHINE BEUGNOT vs. HENRY TREMOULET.

### SYLLABUS.

#### ON MOTION TO DISMISS.

Finding upon an examination of the record, and the reasons for judgment of the court below, that there is an amount in controversy between the parties, within the jurisdictional limit of the Constitution, a motion to dismiss the appeal must be denied.

#### ON THE MERITS.

1. The general rule is that the contract of mandate is gratuitous, but in a spirit of justice and where the services are onerous remuneration has, sometimes, been allowed.
2. Courts may infer agreement as to remuneration from the nature of the employment and the relation of the parties.
3. But this doctrine should be applied with caution, to the end that it be not subversive of the plain declaration of the written law.
4. An agent having used his principal's funds in his own affairs is answerable for interest on the same.

5. Where the remanding of a case is made necessary by reason of the deficiencies of allegation in plaintiff's petition, or mistaken relief sought in the prayer, the further costs in the court *a qua* should be at his expense.

APPEAL from the Civil District Court, Parish of Orleans.—*Ellis, J.*

*Solomon Wolff* and *John R. Upton* for Plaintiff, Appellant.

*Charles Louque* for Defendant, Appellee.

The opinion of the court on the motion to dismiss was delivered by WATKINS, J.

On the merits, by BLANCHARD, J.

### ON MOTION TO DISMISS APPEAL.

WATKINS, J. The defendant Tremoulet has filed a motion to dismiss the appeal on the ground, that this court has not jurisdiction *ratione materiae*—claiming, that the amount in dispute is, only, $411.00, exclusive of interest—all the items demanded in the plaintiff's petition having been admitted as correct, save the one for that sum.

This motion is resisted by the plaintiff and appellant, on the ground, that there is in contest, a sum in excess of two thousand dollars, which she claims was the amount earned by the investment of the funds by the defendant while in his hands; and which he, as her agent, failed to remit.

The plaintiff resides in Wiesbaden, Germany, and alleges that the defendant is justly and legally indebted to her, in the sum of $17,779.64, with interest as hereinafter prayed for, for this, to-wit:

That during the minority of your petitioner, the defendant herein, acting as the agent and attorney in fact of Mrs. Julie Beugnot, mother of the petitioner and her duly appointed tutrix, collected for petitioner's account from the Succession of Dr. J. F. Beugnot, petitioner's paternal grandfather, the following sums, to-wit:

July 10th, 1888 ..............................$2,000 00

January 11th, 1889 ..........................10,223 53

August 4th, 1891 ............................ 127 78

July 6th, 1895 .............................. 2,918 33

      Total.....................................$15,269 64

That of said sum he has paid to your petitioner's tutrix,

    On July 16th, 1888 ...........................$1,000 00

Leaving the said defendant indebted to your petitioner in

    the sum of ...................................$14,269 64

That said defendant has further collected for your petitioner seven installments of one hundred and seventy dollars each, or a total of $1190, as follows:

The succession of J. F. Beugnot held a note which had not yet matured, the interest thereon was collected annually, and the share of your petitioner in said interest was collected as aforesaid by the defendant: but of the said amount of $1190, after considerable delay, he remitted to your petitioner $680, leaving him indebted to her in the sum of $510 on this item.

Your petitioner further avers, that defendant herein, at various times sent your petitioner certain remittances, as follows:

August 28th, 1889 ............................$ 980 00

August 26th, 1890 ............................ 1,000 00

September 3rd, 1891 .......................... 1,000 00

September 27th, 1892 ......................... 500 00

February 7th, 1893 ........................... 500 00

February 16th, 1894 .......................... 500 00

September 1st, 1894 .......................... 500 00

March 10th, 1897 ............................ 1,000 00

      Total.................................$5,980 00

That said remittances were forwarded to your petitioner as the interest earned on the capital collected by and on deposit with the defendant, which said annual interest earnings were, by defendant, declared to be four thousand marks in German money, or, approximately, one thousand dollars in money of the United States.

"Under said statement of the defendant, your petitioner is, yet, entitled to the following instalments in interest:

Beugnot vs. Tremoulet.

"For the years 1892, 1893, $500 each.....................$1,000 00
"For the years 1895, 1896, $1,000 each..................$2,000 00

     "Total due for interest earned ......................$3,000 00

"Now your petitoner avers, that the sum due your petitioner by the "defendant was repeatedly demanded from him, but the request was "answered by the said defendant with representations as to the com-"paratively large income which the capital earned, if the deposit was "left with the defendant, and it was under such conditions only that "the same were left with him."

Petitioner represents, that since she has become of age, and her tutrix, during her minority, frequently demanded settlements of the defendant without avail, and her prayer is for judgment against him for the amount first mentioned.

The defendant for answer pleads the general denial, and annexes thereto a detailed statement of the amounts received by him, and payments made, aggregating in amount of receipts, $16,459.64, and payments $9,672.43, leaving a balance due plaintiff of $7,787.21.

Immediately thereafter, the plaintiff filed a motion for judgment *pro confesso* against the defendant for the sum of $7,787.21, as having been admitted, "postponing the settlement and adjudication of all "matters and issues therein, all questions of interest and income on "capital on default, and all other matters of whatever nature in dis-"pute herein between the parties, until such time as the suit will come "before the court in regular order of the docket."

And, to this effect, the judge *a quo* rendered and signed a judgment.

In his reasons for judgment, the judge *a quo* makes use of this statement:

"This left no issue to be tried, except defendant's charge for 2½ "*per cent.* commission, say $411.49, for collection and trouble, and "plaintiff's demand for interest.

"The correctness of all the items of defendant's account is admitted "by the plaintiff. Defendant's right to commission and plaintiff's "right to interest are the sole issues. It is admitted if defendant is "entitled to commission at all, that $411.49, the sum charged, is the "proper amount."

In his reasons for judgment, the judge *a quo* takes up these two items separately, and disposes of them.

Beugnot vs. Tremoulet.

In discussing the latter item, the judge says:

"The interest collected was remitted as received, as the correspond- ence shows; and sums from the capital were, also, remitted from time to time, in response to the call for plaintiff's schooling, to as- sist her in her contemplated marriage, etc."

And, after making a further summary of the evidence, he further says:—

"If the account rendered be true, and this is admitted by plaintiff (except that she denies commissions and claims interest), then his tender relieved him from the demand, and put the plaintiff *in mora*, as I have found that defendant was not in default, previously; he owed no interest, and tendered plaintiff all that she was entitled to, unless it is shown that he used her capital *for his own advantage*.

"The question, therefore, arises, did defendant use plaintiff's money for his own use, or speculate upon it?"

After making a further statement of facts, the judge concludes his reasons, thus:—

"He has paid plaintiff all that he owed her, and he still holds the bonds; they were his bonds, and not plaintiff's.

"He bought them and held them to secure the plaintiff, and not as her property.

"She does not claim the bonds.

"He had ample funds of his own to buy them.

"Their value or earnings are of no moment here.

"During his management of plaintiff's affairs, he remitted to her mother for plaintiff's account, $7,758.04, etc."

On this statement he concludes that the defendant is not indebted to plaintiff for the amount claimed.

On this condition of affairs as presented in the record, and on the reasons of the judge *a quo* for his judgment, the plaintiff's appeal is predicated; and, in our opinion, she is entitled to a hearing before this court, because there seems to be still in contest an amount within the jurisdiction of this court.

Therefore, the motion to dismiss is denied.

## ON THE MERITS.

BLANCHARD, J. Plaintiff was the beneficiary of a certain interest in the succession of her grand-father, Dr. J. F. Beugnot, who died in New Orleans in 1887.

She was a minor and resided with her widowed mother in Germany.

The mother acted as her tutrix, though not formally qualified as such.

Defendant, by appointment of the mother, became the agent in America of the plaintiff, to act for her, represent her, collect, receive and receipt for the moneys coming to her from her grandfather's estate.

This agency had continued about eleven years when the present action was brought.

By the laws of Germany the plaintiff did not reach her majority until she had attained the age of 25 years. Having been born in 1872, she did not become of age until June, 1897. This suit was filed in April, 1898.

No dispute as to the authority of the mother to appoint defendant agent aforesaid is raised.

Defendant, beginning with July 10, 1888, collected from time to time various sums for account of the plaintiff, and made to her and her mother various remittances extending through the period of his agency.

After attaining her majority, the plaintiff asked an accounting and settlement at the hands of the defendant. The latter promptly tendered his account, showing a balance of $7,787.21 due his principal and offered payment of same, provided a receipt in full were given him. This was declined, the plaintiff claiming a larger sum was due her than what the agent's account showed.

This suit followed.

It proceeds upon the hypothesis that the remittances made from time to time by defendant to his principals in Germany represented the earnings of the capital belonging to the plaintiff in the hands of defendant, realized by him for her account from the succession of her grand-father, that but a small part of the aggregate sum so remitted is chargeable against the capital itself, and that, in consequence, nearly the whole of the capital or principal amount so collected from her grand-father's estate is due her—being a sum largely in excess of that tendered by defendant.

For answer defendant denies that the remittances he had made represented the earnings of the funds he held for account of his principal, annexed a detailed statement of the amounts received by

him and payments made, showing a balance due the plaintiff of $7,-787.21, and announced his willingness now, as in the past, to pay the same over to her on obtaining his discharge.

Following the filing of this answer and its annexed statement, counsel for plaintiff moved for judgment for the $7,787.21, the balance admitted to be due. In this connection it was asked that the settlement and adjudication of all matters at issue in this suit, all questions of interest and income on capital, be postponed until such time as the cause might come before the court in due course for trial.

This motion was allowed, defendant was adjudged to pay over to plaintiff the sum he admitted to be due her, and other matters at issue were ordered postponed as prayed for.

This ruling was proper and is sustained by precedent. Gilly vs. Roumieu, 11 La. Ann. 746; Second Municipality vs. Corning, 4 La. Ann. 407; Parsons vs. Suares, 9 La. 411; Skinner vs. Dameron, 5 Robinson 447; Small vs. Zacharie, 4 R. 145.

Defendant paid the amount.

Plaintiff does not dispute any of the items appearing upon defendant's account save one of $411.49, being a charge of 2½ *per cent.* commission on $16,459.64 collected.

This, she contends, is not legally due defendant.

After payment of the $7,787.21 aforesaid, nothing was left in dispute between the parties, to be adjudicated on the trial of the case, except the item for commissions, and the claim set up by plaintiff in her petition that the remittances made to her from time to time were earnings on the investment of her capital in the hands of defendant.

The decision below was against plaintiff on both these issues, and she appeals.

## I.

The general rule is that the contract of mandate is gratuitous. The codal provision is that it is gratuitous unless there has been a contrary agreement. C. C. 2991. But in a spirit of justice and where the services are onerous, responsible and toilsome the court has, sometimes, allowed remuneration to the mandatary. Packet Co. vs. Brown, 36th La. Ann. 144; Waterman vs. Gibson, 5th La. Ann. 672.

In the latter case the court held it was not necessary for an agent to establish an express agreement that he should have a pecuniary remuneration for his services, and that courts may infer such agree-

ment from the nature of the employment and the relation of the parties.

This ruling was approved in Succession of Krekeler, 44th La. Ann. 726, where it was, in effect, held that it is of the nature, but not of the essence, of mandate that it be gratuitous, and that without express agreement courts may infer an implied contract to pay from the character of the services rendered and the relation of the parties.

See also to the same effect Decoux's Heirs vs. Plantevignes, 10 La. 508; Navigation Co. vs. Collins, 12 La. Ann. 120; Succession of Fowler, 7 La. Ann. 211.

While the rule announced in these decisions merits our re-affirmance, and is, we think, applicable to the instant case and determinative of the question at issue in favor of defendant, it should always be applied guardedly—with caution—to the end that it be not subversive of the plain declaration of the written law.

Here, the agency of defendant extended through many years; the principal was in a distant country beyond the seas; much correspondence was necessary and was had; there was the employment of counsel and the superintendence of litigation which was pressed to a highly successful issue; as the result considerable sums of money passed into the hands of the agent; remittances were necessary and were made; and the residue carefully preserved against the time when the minor should become of age, to be then handed over to her. All this involved no little labor, time, thought and responsibility, and from the same may reasonably be inferred a tacit understanding, an implied contract, to reimburse defendant.

The court a qua did not err in allowing him compensation for his services, arrived at by a calculation of 2½ per cent. upon the funds which passed into his hands, and which he administered.

## II.

Plaintiff misjudged the nature of her demand against defendant. Her petition sets forth the relationship existing between her and him and drew therefrom certain conclusions. The testimony offered at the trial does not warrant these conclusions. She is not entitled to a judgment for specific sums as earnings, apart from interest, on her capital in his hands. Proof is lacking to justify this. There was no direct investment of her funds to earn the amounts claimed. The funds which came into the agent's hands were not specifically invested

either in her name, or his. They were mingled with his own funds and thus lost their individuality. He used his own money and that of plaintiff thus mingled as a common fund in the purchase of bonds, stocks, etc. The purchases were all made in his own name and for his sole account. He testifies he bought bonds so that when his principal demanded her own he could readily turn them into cash to meet the demand.

The District Judge was right in holding plaintiff not entitled to judgment for any sum or sums as claimed in her petition.

But having used his principal's funds in his own affairs he must be held answerable to her for interest on the same.

"The attorney," says C. C. 3015, "is answerable for the interest of any sum of money he has employed to his own use, from the time he has so employed it".

And this is the demand which plaintiff, under the circumstances here disclosed, should have made in her petition and the prayer thereof.

Cases may arise where an agent should perhaps be taxed the highest rate of conventional interest on the use he makes of his principal's funds, and there is authority for the same. 41 La. Ann. 386.

But we do not regard this such a case.

This agent should be called upon to pay only the legal rate of interest (five *per cent. per annum*) upon the funds of his principal which came into his hands, and this according to the rule laid down in C. C. 2164—that of partial payments. Succession of Coco, 32nd La. Ann. 333.

This interest should not be computed beyond the date of the payment by defendant of the amount awarded against him by the trial court, as hereinbefore explained. Whatever sum he then owed as interest at five *per cent.*, according to the rule of partial payments, should be given against him and no more, and interest on 'that interest is not allowable.

We would, perhaps, be justified (Smith vs. Cocoran, 7 La. 46; Beach's Modern Equity Practice, Sec. 91), though that is not clear, in holding plaintiff entitled to a decree of this kind, notwithstanding the character of her demand and the nature of the prayer of her petition. But we deem it advisable to remand the case, both that plaintiff might amend her pleadings to present her demand in proper form as herein set forth, and in order that she may there, contradictorily with de-

fendant, fix the amounts and dates on which and from which interest is to be allowed, credits given, etc. In other words, to have adjusted there the accounts between them on the basis herein determined.

It is well settled that the court will, in its discretion, remand causes when the interests of justice require it.

Since the remanding of the case is made necessary, in large part, by reason of the deficiencies of allegation in plaintiff's petition, and mistaken relief sought in the prayer, the further costs in the court *a qua* should be at her expense.

For these reasons, it is ordered and decreed that the judgment appealed from, in so far as it allows defendant the charge of $411.49, being 2½ *per cent.* commissions on $16,459.64 collected and administered by him, be affirmed, and in other respects the said judgment be reversed and the case remanded to be proceeded with according to the views herein presented and the law—costs of appeal to be taxed against defendant and appellee.

MONROE, J., concurs in the decree.

Rehearing refused.