*J. G. Rogers* for appellant; *B. & A. Monroe* for appellee.

PETERSON
vs
POIGNARD, &c.

---

## Peterson *vs* Poignard, &c.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Agent. Attachment in Chancery.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

IT being sufficiently certain, upon the evidence, that Peterson has paid various debts which Monroe was bound to pay, and that he is entitled to indemnity from Monroe's estate, to the extent of several thousand dollars, even if he were charged with the $3,000, the recited consideration of his conveyance to Atherson, of the one half of the Hindostan Mill property, it is not deemed necessary to go into any discussion or particular statement of his claims on this account. His payments to Butler's administrators, Hill, the Bank of the United States, Hughes, and Cordis, exceed $7,000, besides costs and expenses, the extent of which we need not determine.

The principal and most difficult questions in the case, grow out of the state of the transactions and accounts of Poignard, as agent for Monroe, and whose indebtedness to Monroe, Peterson is seeking to make available, for the satisfaction of his claim against Monroe. As this latter claim exceeds the amount which Poignard, in any view of the case, owes to Monroe's estate, our

CHANCERY.

Case 75.

January 31.

8bm309
137  648

It is the duty of
an agent, who
is competent,
where he has the
collection and
disbursement of
the funds of his
principal, to keep
a fair account of
the business
transacted; his
failure to do so,
creates a pre-
sumption against
him.

attention has been particularly directed to the questions arising upon Poignard's accounts.

There are several circumstances which tend strongly to excite suspicion with regard to the fidelity of Poignard in his agency. Indeed we regard it as being well established, that he acted in several particulars in violation of his trust, and that he has neglected his duty in a most important point, in not having kept a precise and accurate account of all transactions pertaining to his agency. His competency to do this is well established, and it cannot be doubted that he was well aware of its importance and necessity. His failure authorizes unfavorable inferences, and subjects him now when called on for an account, to a heavy burthen of suspicion, as well as of proof. Nevertheless, we are not of opinion that on these grounds, every doubt which may arise in the case, should as a matter of course, be solved against him. The difficulties and presumptions arising from the great lapse of time, within which nearly all the parties concerned in or cognizant of the most questionable transactions now involved, have died, and many facts have doubtless been forgotten by those who remain, should operate to some extent against Peterson, who had full knowledge of Poignard's agency, and of the means in his hands, and of the interests and transactions committed to him, and yet although pressed and harrassed from early in the year 1835, for debts which Poignard ought to have paid for Monroe if he could, and although he was for several years in full correspondence with Poignard, it does not appear that he ever complained, or ever inquired of his acts, until some short time before he filed his cross bill in 1838.

Poignard, with his first answer to the cross bill, filed an account of moneys paid, and liabilities incurred for Monroe, amounting to about $4,850, and a list of moneys received for him, of about $1,391. The master to whom the accounts were referred, allowed as charges against Monroe, only about $2,700, and made additional charges against Poignard, which swelled the account against him to about $7,663; and calculating interest on each side, stated a balance against Poignard of more

than $8,500. To this report, Poignard filed nineteen exceptions, complaining of charges made and credits refused. He also filed eleven exceptions to the account stated, as between Peterson and Monroe, and Peterson filed four exceptions to the two accounts.

The general dismissal of the bill without an explicit decision upon any of these exceptions, has thrown upon this Court the labor of investigating them all upon the pleadings and evidence contained in a record of more than 900 pages.

As already said, the only difficulty which it is necessary to meet, arises upon the accounts between Poignard and Monroe. Upon many of the exceptions made to this account, the question as to the propriety of the charge made, or the credit claimed, admits of no certain, and not even a satisfactory solution. We have had to weigh probability against probability, conjecture against conjecture, and doubt against doubt.

We do not deem it necessary to state in this opinion the facts and considerations applying to the numerous exceptions to the report of Poignard's accounts. After a laborious investigation of the record, and the fullest consideration which we have been enabled to bestow upon it, we have come to the conclusion, that after making all just charges and credits that are sufficiently established on either side, and including all claims made by Poignard, he stands indebted to Monroe's estate in the sum of at least one thousand dollars; and under the uncertainties which meet us on every side, we cannot safely say that he owes more.

Wherefore, the decree is reversed, and the cause remanded, with directions to render a decree for the payment of one thousand dollars by Poignard, in discharge of his debt to Monroe's heirs, and in discharge of so much of Peterson's demand against Monroe's estate, which sum should be decreed either to Peterson or for the benefit of the complainant, Fisk, as circumstances may dictate, and Poignard should pay the costs both in this and in the Chancery Court.

*Funds of a non-resident debtor in the hands of a resident agent decreed to be paid to a creditor of the non-resident.*

*Crittenden and W. Browne* for appellant; *Guthrie* for appellees.