CHOCTAW, O. & G. R. Co. *et al.* v. SITTEL *et al.*

No. 488, Ind. T.   Opinion Filed August 10, 1908.

(97 Pac. 363.)

1. **APPEAL AND ERROR — Briefs — Waiver of Error.** The Supreme Court will not examine the record filed in any case in search of prejudicial errors which are not clearly pointed out and insisted upon in the brief of the complaining party, but all such errors, if any, shall be considered as waived.

2. **TRUSTS—Accounting—Credits—Burden of Proof.** In a suit for an accounting, one who is liable to render an account has the burden of proving allowances or credits which he may claim.

3. **SAME—Fraud of Agent—Principal's Funds—Speculation—Principal's Right of Subrogation.** An agent who speculates in the subject-matter of his agency, or intentionally and unknown to the principal uses his money for an unauthorized purpose to benefit himself, violates his contract of agency, and betrays his trust, and the principal, under such circumstances, is entitled to be subrogated to all the benefits which by the terms of the contract would accrue to the agent.

4. **APPEAL AND ERROR—Review—Findings by Master—Conclusiveness.** Where the findings of fact of the master, in a suit for an accounting, are substantially predicated upon the issues made by the pleadings, and there was evidence reasonably tending to support them, a decree entered thereon by the court below will not be disturbed by the Supreme Court.

(Syllabus by the Court.)

*Error from the United States Court for the Central District of the Indian Territory; Wm. H. H. Clayton, Judge.*

Action by Edwin D. Sittel and others against Allen Wright, the Choctaw, Oklahoma & Gulf Railroad Company, and another for an accounting. Judgment for complainants as against defendant railroad company and dismissing the case as to the other defendants, and both parties bring error. Affirmed.

*C. B. Stuart,* for plaintiffs in error.
*Samuel A. Wilkinson,* for defendants in error.

KANE, J. This was a suit for an accounting commenced in the United States Court for the Central District of the Indian Territory, wherein Edwin D. Sittel and Fritz Sittel were plaintiffs, and Allen Wright, J. W. McLoud, as trustee, and Choctaw, Oklahoma & Gulf Railroad Company, a corporation, were defendants. The plaintiffs in their complaint stated their cause of action, in substance, as follows:

That Edwin D. Sittel is a white man, who, at the time of the commencement of this suit, had resided within the Choctaw Nation during a period of 25 years, and that Fritz Sittel is a son of the aforesaid Edwin D. Sittel, and is a member of the Choctaw Tribe of Indians by marriage, and has resided within the Choctaw Nation during the past 23 years. That the defendant J. W. McLoud claims to be or to have been the duly appointed trustee in the matter of a pretended trust deed executed by the above-named Fritz Sittel and wife, Melvina, on the 23d day of October, 1890, to secure the payment of $45,000, which it was pretended that Charles Hartshorne and William C. Alderson and their associates had loaned to Fritz Sittel and his wife, Melvina. That the defendant Choctaw, Oklahoma & Gulf Railroad Company is a corporation organized under and by virtue of an act of Congress, and is doing a railroad and mining business within the jurisdiction of the United States court for said Central District, and has agents and officers located within said jurisdiction. That during the year 1894 the plaintiff Fritz Sittel, as a member of the Choctaw Tribe of Indians, settled upon and obtained possession of a certain tract of land situated in said Choctaw Na-

tion, which tract of land is specifically described in plaintiff's complaint. That during the year 1886 the plaintiff Edwin D. Sittel moved upon and took possession of said tract of land as a tenant of plaintiff Fritz Sittel, and remained thereon, and improved the same until the year 1899. That in the year 1899 Edwin D. Chadick, acting as the agent and general manager of the Choctaw Coal & Railway Company, a corporation organized under the laws of the state of Minnesota, which corporation was authorized by an act of Congress to do business within the Indian Territory, entered into a contract with these plaintiffs, by which these plaintiffs were to allow, and did agree to allow, the said Chadick as manager and agent of said last-mentioned corporation to build many houses on the aforesaid tract of land. That said contract was in writing and signed by these plaintiffs. That the said Edwin D. Chadick took charge of said contract, and delivered the same to the said Choctaw Coal & Railway Company, and the railway company did thereafter deliver the same to the defendant Choctaw, Oklahoma & Gulf Railroad Company, and said last-mentioned railroad company now has possession of said contract, and said plaintiffs are unable to obtain possession of the same or a copy thereof. That pursuant to said contract said Choctaw Coal & Railway Company advanced the sum of $18,700 for the purpose of building the before-mentioned houses. That prior to the time said money was advanced it was mutually agreed and understood by and between these plaintiffs and said Chadick and the officers of said Choctaw Coal & Railway Company that the said corporation was to have possession of said houses when erected, was to collect the rent thereon, and should apply the same to the cost of building the same, and should charge the money so advanced to these plaintiffs, and credit these plaintiffs with the rent received from the use of said houses. And it was further agreed and understood by and between all of the parties to said contract that when the rent of said houses should equal the amount so advanced by said corporation in the erection of said houses, together with 6 per centum interest per annum on said amount, then the

corporation should and would deliver possession of said houses to these plaintiffs, and would relinquish all of its claims to and interest in said houses to these plaintiffs. That, pursuant to said agreement entered into by and between said corporation and said Chadick and these plaintiffs, the said corporation erected on said land certain houses, which are specifically set out and described in the complaint. That the amount expended by said corporation in the erection of said houses amounted to $18,700, and the rent which said corporation and its assigns have collected for the use of said houses amounted to $31,688 or should amount to said sum. That all of said houses were completed on the 1st day of October, 1890, and immediately thereafter said corporation took possession of all of said houses, and did rent and use and occupy the same, and the said corporation and its agents and assigns have ever since held, used, and enjoyed the use and rent from said houses.

There are further allegations to the effect: That the before-mentioned trust deed, executed by said Fritz Sittel and his wife, Melvina, was executed without consideration. That long after the said houses were erected the aforesaid Chadick, as the agent and general manager of the Choctaw Coal & Railway Company, stated to said Fritz Sittel that certain members of the council of the Choctaw Nation were then contending that the said houses belonged to the said railroad company, and that as manager of the railroad he was fearful of trouble with the authorities of the Choctaw Nation; also, that some of the directors of the railroad company were apprehensive lest the money which had been expended in the erection of said houses should be lost. That he as manager of said railroad company desired to secure a mortgage on said houses, so that it might appear to the authorities of said nation that said Fritz Sittel was the owner of said houses, and so that said Chadick might say to said directors that said money was secured by a mortgage.. That, in order to aid said Chadick, said Fritz Sittel and his wife, Melvina, did execute said trust deed. That there was no other consideration paid to or received by said Fritz Sittel or his wife, Melvina, for the execu-

tion of said deed. That at the suggestion of Chadick said deed was made to recite that Charles Hartshorne, who was then president of said corporation, and William C. Alderson, who was then treasurer of said corporation, did advance to said Fritz Sittel and his wife, Melvina, the sum of $45,000, when in truth and in fact said Hartshorne nor said Alderson nor any one else had advanced to said Sittel and his wife anything whatever. That said plaintiff Edwin D. Sittel knew nothing of the execution of said trust deed until a long time after the same had been executed.

It was further alleged, in substance: That prior to the 17th day of July, 1894, said Choctaw Coal & Railway Company became insolvent. That on said 17th day of July, 1894, the United States court for the Second judicial division of the Indian Territory made an order in the matter of a suit between Langhorne, Wister, *et al.* against the aforesaid Choctaw Coal & Railway Company, directing and adjudging and decreeing that all and singular the properties and appurtenances of said corporation be sold to the highest and best bidder. That on the 8th day of September, 1894, in obedience to said order of court, the property and franchises of said last-mentioned corporation were sold to Francis I. Gowan and others, and immediately thereafter the purchasers at said sale took possession of the property and franchises owned and held and enjoyed by said Choctaw Coal & Railway Company, and said purchasers did then and there organize a corporation to be known as the Choctaw, Oklahoma & Gulf Railroad Company, which is one of the defendants herein. That on the said 8th day of September, 1894, said Choctaw Coal & Railway Company ceased to exist as a corporation, and has never since said date exercised any of the rights, powers, or privileges of a corporation.

There are other allegations contained in the complaint, but, as the foregoing presents the case from the standpoint of the appelles as disclosed by their assignment of error and brief of counsel, it is not necessary to go further into them, except to notice those in relation to the disposal of the property involved, which are to the effect that prior to said 30th day of December, 1895,

said J. W. McLoud and said Choctaw Coal & Railway Company had sold and disposed of many of the before-mentioned houses to various persons, the actual number and description and value of said houses so disposed of being unknown to said plaintiffs; that since said 30th day of December, 1895, said Allen Wright has, with the knowledge and consent of said McLoud and the said Choctaw, Oklahoma & Gulf Railroad Company, disposed of many of said houses to various parties, the exact number and description and value of said houses so disposed being unknown to said plaintiffs; that the rent collected for the use of said houses by said defendants the Choctaw, Coal & Railway Company have more than repaid the amount expended by said corporation in the erection of said houses, or the rent would have more than repaid said expenditure had the defendants and the said Choctaw Coal & Railway Company rented said houses as they could have and should have done, together with 6 per centum per annum on said amount, and there is, or should be, a large excess in favor of these plaintiffs.

The prayer of the complaint is in words and figures as follows:

"Wherefore, the premises considered, plaintiffs pray for an accounting between these plaintiffs and the defendants; that in said account these plaintiffs be charged with the amount advanced by the said Chadick in the erection of the aforesaid houses, and that they be credited with the reasonable rental value of all said houses so erected by the said Chadick from the 1st day of October, 1890, the time when said houses were erected, and the time when the said Chadick took possession of same, to the time of the trial of this cause; that plaintiffs also have credit for the value of all of said houses which have heretofore been sold or disposed of by defendants or either one of them; and that plaintiffs have judgment against the defendants for the amount which shall be found due plaintiffs for the rent of said houses, and for the amount of the proceeds of the sale of the houses heretofore sold by the defendants or either one of them, and for a decree for the possession of all of said houses, and the land upon which the said houses are

now located, which are now in the possession of the defendants or either one of them, and for all costs of this suit."

The defendants by their answer denied in detail many of the allegations of the complaint, and for further answer alleged, in substance, that if, prior to the execution of said deed of trust mentioned in the complaint and the erection of said houses and buildings, said Edwin D. Chadick, who was then and there the manager of the Choctaw Coal & Railway Company, entered into an agreement with Fritz and Edwin Sittel, as set forth in said complaint he did so not as manager of said company, but personally for his own benefit, by the terms of which said Fritz and Edwin Sittel agreed that said Chadick should receive one-half of the profits that should be realized from the sale and rental of the lands at South McAlester, the ownership of which was claimed by Fritz Sittel, and the said Chadick in consideration thereof agreed to procure the erection of dwelling houses and other buildings upon said land, being the land mentioned in plaintiff's complaint; that, in pursuance of said undertaking upon his part, said Chadick advanced for the erection of said houses and buildings about $80,000 or $90,000 in money which belonged to the Choctaw Coal and Railway Company, and, as security for this money, he procured the execution by Fritz Sittel and his wife to said deed of trust mentioned in the complaint, and the same was substituted for the said original agreement mentioned in plaintiff's complaint, if, in fact, said original agreement ever existed; that, while said deed of trust recites that the money used for the construction of said houses had been advanced by Charles Hartshorne and William C. Alderson and their associates, no part of said sum was advanced by said Hartshorne and Alderson, neither of whom had any knowledge of the execution of said deed of trust until long after its execution; said notice of the execution of the same being received by them accidentally, and not from Chadick.

Defendants further say that the money invested by said Chadick for which the deed of trust in question was taken was the money of the Choctaw Coal & Railway Company, and this money

was used by Chadick, with the knowledge of plaintiffs in this case, for his own benefit, and not for the benefit of defendants; that it was furnished by said Chadick without the knowledge or consent of said Choctaw Coal & Railway Company, and without the knowledge or consent of beneficiaries Hartshorne and Alderson, and that, by virtue of the terms of said agreement aforesaid and the deed of trust in pursuance thereof, the action of Chadick and these plaintiffs was a fraud upon the Choctaw Coal & Railway Company; that said money so invested by said Chadick was not done through any knowledge or connivance of the Choctaw Coal & Railway Company, the real beneficiary of said deed of trust, but the said Choctaw Coal & Railway Company never at any time made such investment knowingly or with intent to violate or evade the laws of the United States or of the Choctaw Nation; that, inasmuch as the money of the Choctaw Coal & Railway Company was invested in said premises in the manner above set out, said premises became impressed with an equity in favor of said company to the amount of the money actually advanced, and the contracts between Chadick and these plaintiffs were, by their terms, void and of no legal effect in law as against Hartshorne and Alderson or the Choctaw Coal & Railway Company, and such contracts ought not to be upheld as against the beneficiaries in said deed, except in so far as the real party in interest may be permitted to take advantage of said contracts for the protection of the equity above set out; that as soon as the beneficiary under said deed of trust discovered that said Chadick had advanced its money, and discovered that the said deed of trust had been executed, it asserted its rights under said deed of trust for the security given by the same, and has ever since asserted said right under said deed for security and reimbursement. And defendants further say that, if the said Hartshorne and Alderson and the Choctaw Coal & Railway Company did know that Chadick had advanced the money as aforesaid for the purpose as aforesaid, as soon as the fact that the said deed of trust had been executed was brought to their knowledge, they, believing the same to be

valid and binding upon the said Fritz Sittel and his wife, asserted said interest for the purpose of collecting the money so advanced by the said Chadick.

There are several other paragraphs to the answer, one setting up the defense of former adjudication; but, as counsel for both parties have briefed the case upon the issues joined by the foregoing allegations of the complaint and answer respectively and as their respective specifications of error are all predicated upon the same issues, it is reasonable to presume they have waived all other questions.

The Supreme Court will not examine the record filed in any case in search of prejudicial errors which are not clearly pointed out and insisted upon in the brief of the complaining party, but all such errors, if any, shall be considered as waived. *Penny v. Fellner*, 6 Okla. 386, 50 Pac. 123.

After the issues were joined the cause was referred to a special master to make findings of fact and report the same to the court. In relation to the instruments mentioned in the pleadings upon which the accounting herein was prayed, the special master made the following findings of fact:

"(6) Was the contract sued on herein and made the basis of this action entered into between the plaintiffs and Chadick, manager of the Choctaw Coal & Railway Company? The evidence shows that this contract, if it ever existed, is lost, and that neither of the defendants has ever seen it. The only evidence offered to establish the execution and terms of said contract is that of plaintiffs Fritz and Ed Sittel, and they themselves do not agree as to its terms. Said testimony on this point being so conflicting and irreconcilable that the master is unable to state its terms and conditions, I therefore find that if there was a written contract, as alleged, its terms and conditions have not been established.

"(7) I find that the deed of trust, executed by Fritz Sittel and Melvina, his wife, to Edwin D. Chadick as trustee, on the 23rd day of October, 1890, is a *bona fide* instrument, and entered into for a valuable consideration, and that the copy of said deed offered in evidence is a true copy of the original, and, in this

connection, I further find that if there was a contract, understanding, or agreement between plaintiffs and Chadick prior to the execution of said deed of trust that it was set aside and annulled by the parties and the deed of trust submitted for the same."

With the deed of trust established as the basis upon which settlement should be had between the parties, the master in his original report and in three separate supplemental reports, after elaborately going into all of the details connected with the transactions between the parties, found and so reported to the court that there was due the plaintiff from the defendant the Choctaw, Oklahoma & Gulf Railroad Company the sum of $6,085.70. The court after overruling certain exceptions filed by both parties to the report, approved the same, and entered judgment in favor of plaintiff for the above amount, with interest thereon at 6 per centum per annum from the date of the judgment, and taxed the costs against the defendant the Choctaw, Oklahoma & Gulf Railroad Company, and dismissed the cause as to the defendants Allen Wright and J. W. McLoud. From this judgment, except the dismissal of the case as to the defendants Allen Wright and J. W. McLoud, both plaintiffs and the defendant Choctaw, Oklahoma & Gulf Railroad Company appealed to the Court of Appeals of the Indian Territory, and the cause found its way into this court under the terms of the enabling act and the schedule to the Constitution. Both sides assign numerous errors. Only those argued by counsel are noticed, as the others must be deemed to be waived.

The first five assignments of error of the appellant, the Choctaw, Oklahoma & Gulf Railroad Company, seem to have been made under a misapprehension of the facts as found by the master. They all attack purported findings of the master to the effect that the contract originally sued upon was a valid, existing contract, established by the proof. We do not gather such a meaning from the findings of the master. The master says in his report:

"I further find that if there was a contract understanding or agreement between plaintiffs and Chadick prior to the execu-

tion of said deed of trust that it was set aside and annulled by the parties, and the deed of trust substituted for the same."

The findings of the master in this particular were evidently in accord with the theory of counsel for appellant, and, if the calculation in arriving at the amount due the appellees was based upon the terms of the deed of trust and upon the contract mentioned in the complaint, such calculation redounded to the benefit of the appellant, and it is difficult to understand why it has anything to complain of on that score. That counsel took this view of his case is apparent from a quotation from his brief in arguing his eighth assignment of error:

"The court below, however, has used them both (the contract sued on and the deed of trust) as a basis of computation in this suit. If the court will carefully examine this last point, it will, we think, be much impressed with the idea that the fatal error in this case on the part of the court below was in not forcing these plaintiffs to stand on the deed of trust, which was undoubtedly the real contract between the parties, and in our judgment the only one made. If the court below had done this, this case would have been correctly solved and the court would have stated to these plaintiffs, 'You have no right of action here until you show me that you have paid off this deed of trust'; and, inasmuch as the money expended under the deed of trust, and shown in the proof, amounts to something like $80,000, it would have been impossible for the plaintiffs to do this thing."

In our opinion this is exactly what the court below did. It required the master to make a computation of the exact amount of money supplied by Chadick as the agent of the appellant or its predecessors, and ordered this sum to be restored according to the terms and conditions of the deed of trust before the appellees were entitled to anything. There is no complaint of any error in the computation made by the master, and it must be presumed that the amount he found due the plaintiffs after all the moneys secured by the deed of trust had been paid was correct. If the master departed from the deed of trust at all as a basis for his computation, it was in finding that Chadick was to have one-third in-

terest in the houses in controversy after the amounts secured by the deed of trust were all paid, but, as the court allowed the appellant credit for this item, it has no reason to complain.

Counsel for appellant, the Choctaw, Oklahoma & Gulf Railroad Company, argues his sixth and seventh assignments of error together. In arguing these assignments he says:

"The vice of the court's reasoning in this behalf is that we are charged with something like $4,000 as the reasonable rent of the property in controversy. If we had been charged with the rent as actually collected, the plaintiff would still be in debt to the defendant."

There was evidence offered by both parties tending to show the amount of rent actually collected. The plaintiffs introduced evidence to establish the rental value of the houses which they contend was the best evidence at their disposal to establish the amount of rents collected, and the defendants, who had the books and data necessary to accurately establish this point, offered a mass of documentary evidence, which the master also had before him. It must be presumed that from this evidence he made his findings of fact on that particular point. We cannot say from an examination of the record and the mass of evidence adduced that the findings of fact are not supported by sufficient evidence. We believe the computations made by the referee are substantially correct, based upon the theory of the case presented by the counsel, and, if there are discrepancies in that particular, counsel have failed to point them out. Besides, one who is liable to render an account has the burden of providing allowances or credits which he may claim. *Thatcher v. Hayes et al.*, 54 Mich. 184, 19 N. W. 946; *Pratt v. Grimes*, 48 Ill. 376.

Furthermore, on the question as to whether the suit had accrued at the time it was commenced, the evidence shows that all of the property involved in the deed of trust had been sold long before the commencement of the suit. Under such circumstances, if the suit had not matured at the time it was commenced, there was no possibility of it ever maturing. The property having all

been sold by the agents of the appellant, the time for a settlement between the parties was ripe. There is no disposition on the part of any of the parties to the suit to complain of the manner of the disposal of the houses, although it is not entirely clear by what authority they were sold. The suit was brought for the purpose of having an accounting between the parties and a settlement of long standing differences, and the basis of this accounting, to our mind, was entirely just and equitable.

In his eighth assignment of error counsel complains because the court below did not hold that the contract sued upon was void because made in fraud of the beneficiaries of the same, and in arguing this assignment of error says:

"The trial court took a curious and most extraordinary view of this case in regard to this particular point. In noticing the last computation of the master which was ordered and approved by the court, it will be seen that under the direction of the court he calculated the interest on the cost of the 27 houses at the rate of 6 per cent. for one year and then deducted one-half the rent that year. This court must bear in mind clearly that the court below deducted one-half this year's rent on the theory that, as under the deed of trust, Chadick was to get one-half the rents for his services, and, as he had expended money for these houses without the consent of the beneficiaries under the deed, he, Chadick, would not be permitted to take the personal benefits of said deed, and the Sittels would not be permitted to get the interest which Chadick had under the deed. In other words, the court held that the one-half year's rent which Chadick was to get for his services as trustee under the deed belonged to the beneficiaries under the deed, and must be allowed to the beneficiaries in this suit. At the end of said computation it will be found that Chadick's one-third, $2,165.64, was substracted from $6,496.63, which leaves the amount held by the court to be due the plaintiffs herein with 6 per cent. to be added for 6¾ years. This one-third interest of Chadick was deducted because the court held that under the contract sued on in this case Chadick was to get one-third, but under the law that one-third belonged to the beneficiary, which we will call the defendant herein, and that, as this one-third belonged to the beneficiary, the Sittels could not claim that."

The foregoing states, with substantial accuracy, the theory of the master. The record shows that on the 24th day of January, 1902, the court re-referred the cause to the master with directions to make further proof as to the date of the sales of all the houses in controversy, how sold and by whom, and the condition of the mortgage or deed of trust alleged to have been executed by Fritz Sittel and his wife to Edwin D. Chadick, and further proof as to the execution of said mortgage or deed of trust, further proof to be taken as to the interest of the said Chadick in the contract sued on herein, and as to whether the Kala-Inla building was included in the contract between the plaintiffs and Chadick, and as to the total amount of money expended by Chadick as manager of the Choctaw Coal & Railway Company in the erection of the houses covered by said mortgage or deed of trust, and that said proof, when so taken, be passed upon by the master and his conclusions of fact be reported to the court before its next regular term. In pursuance of this order, additional proof was taken to establish the personal interest of Chadick in the property involved in the deed of trust, and the master found from the consideration of such evidence that "Chadick was to have one-third interest in the houses in controversy after the amounts secured by the deed of trust were all paid." The deed of trust recites on its face that "the said Chadick is during the continuance of this trust to have full and quiet and undisturbed possession of said premises as trustee and agent for said Fritz Sittel, having full control thereof, with authority to care for the same, keep up repairs, rent and collect the rents for the same as trustee and agent for said Sittel as aforesaid, and shall account to the said Sittel for the amount thereof, deducting all the expenses and retaining one-half of the net income for his services rendered in connection with this business and this trust." What the court below did was to subrogate the appellant to the rights of Chadick, as disclosed by the above findings. As there was evidence reasonably tending to support the findings, this, we think, was entirely proper. The evidence shows that in the transactions involved Chadick was the agent of the

company, and that without its knowledge or consent he used its money to erect all of the buildings that were built under the terms of the contract; that the principal upon discovering that Chadick was using its money for such purpose, and also for the purpose of personal gain to himself, asserted its claim to whatever profits accrued to him by the terms of the contract.

In *Plotner v. Chillson, ante,* p. 224, 95 Pac. 775, Mr. Justice Turner quotes approvingly from *McKinley v. Williams,* 74 Fed. 94, 20 C. C. A. 312, as follows:

"To permit the agent of a vendor to become interested, as the purchaser or as the agent of a purchaser, in the subject-matter of the agency, inaugurates so dangerous a conflict between duty and self-interest that the law wisely and peremptorily prohibits it. An agent of a vendor, who speculates in the subject-matter of his agency, or intentionally becomes interested in it as a purchaser or as the agent of a purchaser, violates his contract as agent, and becomes indebted to his principal for the profits he gains by his breach of duty."

This rule, we think, is applicable in principle to the case at bar, and the court below very wisely allowed the appellant to be subrogated to all rights accruing under the contract, not only those which by its terms accrued to the principal, but also those accruing to the agent. We do not see why the appellant should complaint of the application of this rule to this case, as it is clearly to its advantage. And the appellees have no right to complain of it, because it was only enforcing a contract that they entered into in good faith, and the fact that the court below held the appellant to be the beneficiary of the profits accruing to Chadick under the contract instead of the appellees, is no reason for just complaint.

As to the assignments of error on behalf of the appellees, we do not believe they are well taken. There was no serious controversy between the parties as to the execution of the deed of trust, and we believe the evidence offered to prove its contents was entirely admissible. Neither was there any serious fault found with the manner of sale of the houses. It is evident from the

record that the principal object of the suit was an accounting between the parties, and that the principal matter in controversy was whether the accounting should be based upon the contract alleged in plaintiff's complaint or upon the deed of trust set up by the defendants in their answer. Counsel for appellees set out in full in his seventh assignment of error a statement which in all respects substantially agrees with that made by the master in so far as making computations is concerned, as follows:

"It is observed by comparing the foregoing with the master's findings that I have adopted (1) the rental value as found by the master; (2) the 3 per cent. depreciation of the houses as found by the master; (3) the date of the sale of the various houses as found by the master; (4) the value of the lots as found by the master, and that the only difference in his calculation and my figures is in my giving plaintiff credit for all of the rents, instead of one-half as he did, and in giving plaintiffs credit for all the proceeds arising from the sale of the property after the money expended in building the houses was repaid, instead of crediting them with only two-thirds, as the master did."

We have commented on this feature of the case in another part of this opinion, and approved the rule of the court below in allowing the appellant credits for the profits, which, by the terms of the contract, would have accrued to Chadick. As these items account for the difference between the computation of the master and the computation of counsel, and as we have decided that the court below was correct in allowing them to the appellant, it is not necessary to discuss the matter further.

From a careful review of the record and the report of the master, we are satisfied that a fair and equitable accounting has been had, and that the judgment of the court below should be affirmed, and, it appearing that the judgment below has been superseded, that appellees are further entitled to the penalty of 10 per cent. on the amount of the judgment superseded as provided by section 1311, Mansf. Dig. (Ann. St. 1899, § 813). It is so ordered.

All the Justices concur.