CASE 77.—ACTION BY JOHN G. WINN AGAINST THE EQUIT-
    ABLE LIFE ASSURANCE SOCIETY OF THE UNI-
    TED STATES.—March 18, 1910.

## Equitable Life Assurance So., U. S., v. Winn

Appeal from Montgomery Circuit Court.

ALLIE W. YOUNG, Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Insurance—Tontine Policy—Counting.—In a suit by a matured tontine policy holder for an accounting of surplus, it was not necesary that all members of the class to which plaintiff's policy belonged should be made parties.

2. Pleading—Traverse—Admissions.—A traverse must negative every material fact in the adverse pleading to constitute a complete defense, since if any material fact is not put in issue, but is admitted, the pleader is precluded from denying obligations implied by law from such admitted facts.

3. Insurance—Tontine Policy—Counting.—In an action by a tontine policy holder for an accounting after the completion of the tontine period, defendant did not deny the issuance of the policy, its engagements, performance of its conditions by plaintiff, his selection of an option under its terms, the settlement made, and the representations on which it was made, but pleaded that the amount to which plaintiff was entitled as of the date of settlement was $1,824.50, and no more, and denied that any other or different sum could be shown by defendant's books to be due plaintiff. Held, that such alle-

gation was properly stricken as not a proper traverse, since defendant, having admitted the facts stated, could not deny plaintiff's right to an accounting.

4. Insurance—Tontine  Policy—Accounting—Judgment.—Where, in a suit by a tontine policy holder for an accounting, the insurance company refused to make an accounting as ordered, the court was warranted in proceeding to judgment for the sum demanded.

5. Insurance—"Tontine  Contract"—"Tontine  Period."—A "tontine contract" of insurance is a life policy, and, in addition, an agreement by the insurer to hold all the premiums collected on the policies forming the class for a specified period called the "tontine period" or period of distribution, and, after paying death losses, expenses, and other losses out of the fund so accumulated, to divide the remainder among those who are alive at the end of the tontine period, and who have maintained their policies in force.

LEWIS APPERSON, JOHN R. JUDY and HUMPHREY & HUMPHREY for appellant.

ROBERT H. WINN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE NUNN— Affirming.

This case presents the question of the right of a holder of a tontine policy of life insurance to have from the insurer an accounting of the funds to be apportioned to the policy. ·

Appellee, John G. Winn, in July, 1884, took out a life insurance policy in the Equitable Life Assurance Society of the United States for the sum of $3,000, for which he agreed to pay and did pay as premiums $82.17 a year for 20 years. The following is a provision of the contract of insurance: ''That upon the completion of the tontine period on July 19, 1904, provided this policy shall not have been terminated previously by lapse or death, said John G. Winn shall have the option either: First, to withdraw in cash this policy's entire share of the assets, i. e., the

accumulated reserve, which shall be eleven hundred and twenty-nine 05-100 dollars, and in addition thereto, the surplus apportioned by this society to this policy; secondly, to convert the same into a paid-up policy for an equivalent amount, provided always that if the amount of said paid-up policy shall exceed the original amount of the assurance, a satisfactory certificate of good health from one of the society's medical examiners shall be required; thirdly, to continue the assurance for the original amount, and apply the entire tontine dividend to the purchase of an annuity, the amount derived from such annuity, together with the annual dividend on this policy, shall be paid in cash to said John G. Winn or assigns; or, fourthly, to withdraw in cash the share of the accumulated surplus apportioned by said society to this policy, and continue the policy in force on the ordinary plan.'' Upon the completion of the tontine period, the insured wrote the society, asking what the cash value of his policy then was, and exercised the first option under clause 5 quoted above. The society wrote him in answer that the accumulated reserve, which was stipulated in the policy to be $1,129.05, plus the surplus apportioned by the society to the policy, was $1,824.54, which was represented to be the cash surrender value of the policy, and which amount the society would give him for the policy. Appellee accepted the sum mentioned, relying upon the society's representations concerning the amount properly apportioned to the policy, and surrendered the policy to the society. On August 21, 1907, appellee filed this action for an accounting. The petition, after setting forth formal statements, the terms of the policy, the fact that the plaintiff had persisted as a member or policy holder for the full

tontine period, paying all the premiums, his application under the first option of the fifth clause of the contract for settlement, and the defendant's representation, of the amount apportionable to the policy, he then pleaded: "And that, in reliance upon said statement as true this plaintiff was misled, and fraudulently induced to, and did surrender said contract to said society, and to accept said sum in payment therefor, which he did in ignorance of the true sum owing him; that the amount or sum actually due this plaintiff on said July 19, 1904, was and is known to the defendant society, and will and can be shown by its books." Plaintiff (appellee) prayed for an accounting against the society and a judgment for such sum as might be due him, or, on failure of such accounting, for a judgment against the society for $775.46, which it was alleged was the true sum due to be apportioned to the plaintiff's policy out of the funds apportionable thereto. To this petition the appellant interposed a special demurrer for lack of proper parties and a general demurrer.

The special demurrer was properly overruled. While the insurer was a trustee in a sense for the policy holders to invest and apportion the sums constituting the surplus, it was not necessary that all the class be made parties to the suit for an accounting brought by one of them. This suit was not for a winding up of the society, nor for the distribution of its funds. It was only to have ascertained the plaintiff's proportion due under his contract. This suit can properly be maintained without the presence of the other policy holders of that class. The demurrers were each overruled. The appellant then answered. Its answer was a traverse of each allegation of the petition save such as set out the cor-

porate existence of the appellant, the execution and
terms of the contract, the payment of the premiums,
and the plaintiff's election and the settlement had
thereunder. A motion was made by the plaintiff, and
in part sustained by the court, to strike from the
answer certain of its allegations in the form of
denials of parts of the petition, for example: "And
it states that the amount or sum due to the plaintiff
on said date was the sum of $1,824.54, and no more.
Defendant denies that any other or different sum
can be shown by this defendant's books to be due to
plaintiff." Again: "This defendant denies that the
plaintiff is entitled to a showing from the defendant
society, or an accounting. It denies that any trust
or agency existed as between this defendant and
plaintiff, and it denies that the plaintiff is entitled to
any showing or any accounting of any alleged trust
or agency, or that the plaintiff is entitled to any
showing or accounting for the purpose of ascertain-
ing any amount alleged to be due the plaintiff."
Section 95, Civ. Code Prac., states that an answer
may contain a traverse. In subsection 7, section 113,
Civ. Code Prac., it is stated that a traverse is a
denial by a party of facts alleged in an adverse
pleading. Counsel for appellant say: "We are at a
loss to understand upon what principle this motion
was sustained." A traverse must negative every
material fact in the adverse pleading to constitute a
complete defense. If any material fact is not put in
issue, it, being admitted, precludes the pleader from
denying obligations implied by law upon such ad-
mitted facts. Appellant did not deny the issual of
the policy, its engagements, the performance by the
plaintiff of its conditions, his selection of an option
under its terms, the settlement made, and the rep-

resentations on which it was made. When so much was admitted, the law imposed upon appellant the duty of keeping accounts with its policy holders, from which it could be ascertained what was due to be apportioned among them according to the terms of the contracts. The defendant did not deny that it had kept such books. Nor did it deny that the books would disclose the true account. It merely denied that they would show that plaintiff was entitled to the sum claimed by him in the suit. If defendant did keep books by which the true state of accounts of the policy holders of the plaintiff's class belonged, then in an action in equity for an accounting it was incumbent on appellant to disclose what the books did show in that respect. If it did not keep such books, a denial that its books showed any sum due the plaintiff is manifestly a bad plea. In an action upon a note, it is usual and necessary to allege that the defendant promised and agreed to pay the note; but, unless defendant denies its execution, his denial of his promise and agreement to pay is bad. He would thereby deny the law. Here the law likewise imposes certain duties and obligations upon the insurance company who undertake for pay to invest its policy holders' fund in an enterprise, such as a tontine policy of life insurance. The company cannot satisfy its contract by saying that it apportioned to the policy all that was due under it. It must show what was due under it—how ascertained, and from what sources—else it becomes the judge as well as contracting party. The motion to strike from the answer was properly sustained.

The court then ruled the defendant to make its answer more specific. The order is as follows: "The said defendant is now ordered and required to make

the allegation of its answer herein more specific and certain; further, that by its answer it give a full, true, complete, and accurate accounting of all its transactions relative to the policy sued on; further, that it show all premiums collected from the class to which the said policy belongs; further, that it show the deaths in said class; further, that it be required to show the expenses and losses of its business apportionable to said class; further, that it show the number in said class and the amounts received from each; further, that it show the interest earnings, if any, on the sums or funds belonging to said class which were invested by the defendant; further, to show the funds contributed by said class and the plaintiff to the general surplus assets of said company; further, to disclose by its answer in full, free, and accurate accounting of all its transactions, earnings, accumulations, expenses, dividends, receipts from, payments to, and each and every fact appertaining and incident to a correct financial statement of the accounts of that tontine class of which the plaintiff was a member; and to show by said statement each and all of said facts as to the plaintiff, to which the defendant objects and excepts.'' The defendant refused to comply with the order of the court, whereupon judgment was entered for the plaintiff for the sum prayed for in the petition. Where one party is due to account to another, his refusal to do so warrants the presumption against him most favorable to his adversary from the then state of the record; for it is to be supposed that, rather than suffer default upon the matter expressly charged, the party accused would answer so as to reduce the amount could he do so conscientiously. Accordingly it is held that the court may enter de-

cree upon such default and contumacy, treating it as an admission against his interest by the party, and affording a sufficient quantity of evidence to justify the chancellor in so proceeding to judgment. Neal v. Keel's Ex'rs, 4 T. B. Mon. 162; Peterson v. Poignard, 8 B. Mon. 309; Potter v. Porter, 109 S. W. 138, 33 Ky. Law Rep. 129; U. S. Life Insurance Co. v. Spinks, 96 S. W. 889, 29 Ky. Law Rep. 960, 13 L. R. A. (N. S.) 1053.

A tontine contract of insurance is more than a policy of life insurance. In addition, it is an agreement on the part of the insurer to hold all the premiums collected on the policies forming that class for the specified period, which is called the tontine period or period of distribution, and, after paying death losses, expenses, and other losses out of the fund so accumulated, to divide the remainder among those who are alive at the end of the tontine period, and who have maintained their policies in force. The premiums include a sum which at interest at 4½ per cent. compounded will at the end of the expiration of the expectancy of the life of the insured pay to his estate the principal sum insured, which is called the reserve of the policy. That is always provided for and always collected in each life insurance premium. In addition, another sum is included in the premium, called the "mortuary fund," which pays the death losses of that per cent. who die before the expiration of their life expectancies. Their aggregate is the flat or level cost of insurance. Then there is added a sum to cover costs of conducting the business, and for such losses as may occur from other causes than death of policy holders. This "loading" of the premium is more or less arbitrary. All excess above costs, expenses, losses, death

claims, and the reserve constitute what is known as the "surplus," which may also include sums realized from interest received upon the reserves at a greater rate than upon which it was calculated, as well as from the death rate in a given year being less than the experience justified as certainly expected. At any rate, this surplus is regarded as belonging equitably to those policy holders who contribute it. In tontine insurance all who contribute agree that, instead of apportioning it among them all, it may be apportioned among those who outlive the period of distribution. The insurer undertakes to handle the fund for the parties. Its pay is in the costs and expenses which it charges as toll. The balance not only belongs equitably to those contributing to it, according to the terms of their contracts, but the insurance company agrees to so apportion it among them. Now, why should it not keep its contract? To keep it faithfully, and honestly, it is required to keep books of account. Otherwise its apportionment would be a mere guess, even if it rose to that dignity. It is a trustee, an agent of those for whom it has essayed to act. It will not be heard to say that it would be too troublesome to keep the accounts, or would cost too much to render the parties a true statement, or on that account be impracticable to show to a court of chancery in a suit for accounting the state of the books.

Nor are we impressed that it is an impracticable matter to exhibit the state of accounts, if they are kept. If the directors of the society act intelligently and sincerely in apportioning the surplus among those whom they have undertaken to apportion it to, they must have before them when they act substantially the same data called for by the order of the

court in this case. Any less would be such neglect-ful conduct as amounts to bad faith. If they had the data when the apportionment was made, then the same material could be furnished to the court. The defendant ought not be heard to say that he has undertaken to deal with so many people that it cannot find the time to make them any showing of how it has conducted their business, or that its magnitude is such it cannot afford to either keep accurate and intelligible books of account, or have statements made up from them in a case in which a party is justly and legally entitled to it. This primary accounting does not necessarily involve giving the name, number, amount, and so forth of each policy. But a fair and explicit classification of the heads of items stated in the aggregate, and subject to impeachment, should have been furnished along the line indicated in the circuit court's order. The refusal was just ground for the action of the court in entering the judgment appealed from.

Affirmed.