[No. 21451.  Department One.  November 22, 1928.]

VIOLA JOHNSON, *as Administratrix, Appellant,* v.
J. F. REDFIELD, *Respondent.*[1]

*Walter B. Allen,* for appellant.
*Joseph H. Griffin,* for respondent.

TOLMAN, J.—Appellant, as administratrix *de bonis non* of the above entitled estate, filed her petition in

[1]Reported in 272 Pac. 55.

the superior court in the county where administration was in progress, alleging that the deceased had in his lifetime, in anticipation of his early death, sold his then home property in Michigan, for which he received six thousand dollars in cash and a mortgage for one thousand dollars, with interest at seven per cent per annum, payable at the rate of seventy-five dollars per month; all of which proceeds of the sale he turned over to the respondent, as it is alleged, with instructions from the deceased to pay one-half thereof to his wife and that the remaining one-half, or so much as should remain unexpended at the time of his death, should be by the respondent divided equally among his four daughters, of whom she was one.

It is further alleged that the deceased was thereafter brought to Seattle in this state, and died there on July 20, 1924; that the respondent paid to the wife of the deceased but twenty-seven hundred dollars, and has failed and refused to render any accounting as to the balance of the money and property received; and the prayer is for a citation directing respondent to account to the administratrix for all of said money and property, and to pay to the administratrix any amount thereof not properly expended.

To the petition, respondent filed an answer, admitting the death of the deceased and that he left surviving him a wife and four daughters; denying *in toto* all of the allegations as to the receipt of money and property and the failure to pay over and account, and pleading a judgment in a former action in bar. By way of reply, appellant averred that in the former action a voluntary nonsuit was asked for and obtained by the plaintiffs, and the record before us indicates that that defense was abandoned.

Upon the hearing certain depositions were introduced in evidence, and considerable oral testimony

was taken. The evidence, aside from that contained in the depositions, is given in the statement of facts in narrative form, and seems to us very incomplete and unsatisfactory, so much so that we are able to form no idea as to many of the items which the respondent claims to have paid out for and on behalf of her deceased father. At the close of the testimony the trial court said:

"I think this account has items that are not proper, totaling approximately one thousand dollars, but the view the court takes of the matter, that is immaterial. I find that the deceased gave all of this money, that he received from the sale of this property, to Mrs. Redfield, to take care of him the balance of his life, and that it was her money."

We are rather at a loss to account for the holding that the money and property passed absolutely to the respondent, in consideration of her promise to care for the deceased during the remainder of his life. No one seems to so testify except the respondent herself. Had objection been made, she of course, under our statute, would not have been permitted to testify to any such transaction with the deceased, but assuming that no objection was made, still every other fact and circumstance shown in the record tends directly against her claim in that respect and, taken together, we are amply warranted in saying that the evidence preponderates against such a holding.

Respondent admits that she received from her father all of the cash derived from the sale of his Michigan property, except such amount as was paid to his wife, and that she also received the one thousand dollar mortgage which has since been paid in full. There is no direct or convincing testimony, outside of respondent's own, as to what amount was paid to the wife. We must therefore accept respondent's statement that the wife received thirty-five hundred dollars.

This would leave in respondent's hands thirty-five hundred dollars, plus interest at the rate of seven per cent per annum on the deferred payments secured by the mortgage. Since the record gives no information as to when these payments were made, we are unable to determine how much respondent received in interest, but the law casts the burden upon her of accounting, and she should be required to show when and in what amounts the mortgage was paid off, and she should be charged with the whole amount thus received, both principal and interest.

Respondent also admits the receipt of forty dollars from the sale of personal property belonging to her father, and seems to admit the payment of some sort of a death benefit, to which he was entitled, in the sum of two hundred dollars, to the undertaker who buried him; and that amount should be either charged to respondent or a like result obtained by crediting her only the actual amount paid to the undertaker in excess of the death benefit received by him.

As to respondent's account for the moneys expended at Flint, Michigan, and before her father arrived in Seattle, her evidence seems to stand uncontradicted, save only as to the amount paid to Mrs. Loretta Carey. Respondent takes credit for four hundred eighty-four dollars and fifty cents so paid, and produces two receipts, both bearing the same date, one for two hundred ten dollars and the other for two hundred forty dollars. Mrs. Carey gave what seems to be a reasonable explanation of the two receipts on the same day, saying that the respondent paid her two hundred ten dollars for certain expenses and advances and thereafter it was discovered that thirty dollars additional had been so paid to Mrs. Carey previously, and the second receipt was written to cover the whole, but through negligence the first receipt was not taken

up and destroyed. Mrs. Carey testified positively that no other or further sums were paid her. We do not find that respondent disputed this explanation, and we therefore hold that her account for items expended at Flint, Michigan, should be reduced by the sum of two hundred forty-four dollars and fifty cents.

As to respondent's account of the moneys expended for and on behalf of her father during the weeks which intervened between his arrival in Seattle in April and his death in July, 1924, we, like the trial court, find items which seem wholly improper, but there are other items which may or may not be proper, and the evidence brought here does not enable us to discuss them intelligently or determine what, if any, of such amounts are allowable. Respondent simply presented a statement, admittedly made from memory long after the actual transactions occurred, and she and her husband testified generally that the items were proper and were paid. The trial court unduly restricted cross-examination, probably because of the erroneous theory that the property passed to respondent under a contract to support her father.

For the present, therefore, we can only point out such as appear to be clearly improper and which should not be allowed, and return the case for a further hearing as to all of the other items. Notwithstanding respondent charged her father with board, room and laundry at the rate of fifteen dollars per week, amounting to two hundred twenty-five dollars, she also charged for a housekeeper for eleven weeks at fifteen dollars per week, amounting to one hundred sixty-five dollars. Clearly these items are inconsistent one with the other. If the father paid board, room and laundry, he should not be charged for the services of a housekeeper, or if charged for the services of a housekeeper, he should be charged additionally only

with what the housekeeper used to supply board, room and laundry service.

The items amounting to two hundred eight dollars and one hundred twelve dollars, which respondent charges as wages for people employed in her business during the time she was in Flint, Michigan, and in attendance upon her father, seem to us wholly improper and such items as ought not to be allowed to a daughter out of her father's estate under the circumstances shown here.

The item of three hundred seventy-five dollars claimed as arising from the neglect and loss of her business during the fifteen weeks when her father was an occupant of her home, because of her attendance upon him, is likewise wholly improper and should be disallowed.

If these items be disallowed, it is apparent there is something for respondent to account for, and since we hold, as we must under the evidence in the case, that the father in anticipation of his early approaching death placed these funds in his daughter's possession and control for the purpose of providing for his needs and accounting for the remainder so that the four daughters might equally share therein, it follows that the burden is upon her to properly account and establish by a preponderance of the evidence the credits to which she is entitled.

The residue remaining in her hands, being a part of the father's estate, and so treated by all of the daughters who might have attempted to have established a gift *causa mortis* in their favor, should be directed to be paid to administratrix. If there be other creditors of the deceased not yet paid by the respondent, their recourse, if any, would seem to be against the estate.

The judgment appealed from is reversed for fur-

ther proceedings in harmony with the views herein expressed.

FULLERTON, C. J., BEALS, MITCHELL, and HOLCOMB, JJ., concur.