[No. 22364. Department Two. October 8, 1930.]

J. F. REDFIELD et al., *Appellants,* v. VIOLA JOHNSON, *as Administratrix, Respondent.*[1]

[1]Reported in 291 Pac. 1077.

*Elias A. Wright* and *Sam A. Wright,* for appellants.
*Walter B. Allen,* for respondent.

FULLERTON, J.—In this action, the appellants, as husband and wife, sought to enjoin the sale of certain real property levied upon and advertised for sale under a writ of execution issued on a judgment entered against the wife alone. The action has its basis in the claim that the judgment is the separate obligation of the wife, while the property levied upon is the community property of the husband and wife.

The facts giving rise to the judgment are, in part, detailed in the opinion of this court in the case of *Johnson v. Redfield,* 149 Wash. 618, 272 Pac. 55. It appears that the appellant wife received from her father, Michael J. Carey, in his lifetime, some $3,500 in money which she claimed was her own, and which her sisters claimed she held in trust for the purpose of division between the sisters after the death of the father. The trial court, at the first hearing on the issue involved, held in favor of the appellant wife, and entered a judgment in accordance with its holding. This judgment we reversed in the cited case, holding that the wife held the money in trust, for the purposes contended for by the sisters. On the remand of the case, an accounting was had, at which the trial court found that there remained in the hands of the wife belonging to the sisters the sum of $888.72, and entered a judgment against her in favor of the respondent, who is the administratrix *de bonis non* of the father's estate, for that sum. It is on this judgment that the execution was issued.

The real property on which the execution was levied is held under a contract of purchase entered into in

the name of the wife. By the terms of the contract, she agreed to assume and pay a mortgage then on the property, pay on the purchase price the sum of $750 at the time of the delivery of the contract, and pay the balance in monthly installments of not less than fifty dollars each. The purchase price payment was made as agreed upon, and, at the time of the trial, certain of the installments had been paid. The trial court found that the fund which gave rise to the judgment had been used in making the payments. It thereupon entered a judgment to the effect that the appellants take nothing by their action, that the temporary restraining order theretofore issued be dissolved, and that the respondent recover her costs.

On the principal question of fact involved, we have no hesitancy in following the conclusion of the trial court. It seems to us that the evidence is all but conclusive that the fund in question was used in making the payments on the purchase price of the property. It is possible that it is not all that has been so paid, but, to the extent of the amount thereof, it is clear to our minds that it was used in payment of such purchase price.

On the legal questions involved, we do not think that we need follow the argument of the appellants. For its greater part, it is founded on the assumption that the facts are not as the trial court found them to be, and which we here approve. The question, as we view it, is whether the respondent, under the circumstances here shown, can follow the fund into the property in which it has been invested and sequester that property for the purpose of recovering the amount of the fund. We think she can. The appellant wife held the fund for the benefit of her sisters. She was charged with a trust. And no rule is more fully recognized than the rule that a *cestui que trust* may

follow trust funds wrongfully diverted through all its changes, and recover the fund from any property into which it has gone. The rights of innocent purchasers may, of course, intervene, but there is no question here on this score. Both the husband and wife knew the source from which the money was derived that was used in the purchase of the property, and it will hardly do to say that the entity called the community which they composed was ignorant of the fact.

But the appellants argue:

"The husband and the community have a right to their day in court, and have a right to be heard in the first instance upon the question as to whether there is any liability at all. We do not believe that it is proper for a person to sue the wife alone, prosecute their action to final judgment against the wife alone, establish the amount of the liability without the husband or the community being heard, and then contend, in the face of what has commonly been understood to be the law in this state, that the judgment is binding upon the community and the husband while neither of them have ever been heard. The appellant, J. F. Redfield, and the community composed of himself and wife, have at no time been privileged to show or had the opportunity of showing that there was no liability even on the part of Mrs. Redfield in this case."

But we think that both the husband and the community had their day in court in the present action. They brought an action in equity to enjoin an execution sale of real property. If the judgment on which the execution was issued was not obligatory as against all of the parties who have an interest in the real property attempted to be sold, it was their privilege and their duty to make this one of the grounds for enjoining the sale, even to the extent of questioning the consideration on which the judgment was founded. Nor did the trial court, as we read the record, deny either to the husband or the community this opportun-

ity. The husband alone testified in the cause, and we do not find that the court, at any time, denied him the right to show that the judgment against the wife was without consideration. On the contrary, the matter was inquired into. The trial court treated this as one of the issues before it, and decided the question contrary to the contention. One of its findings of fact was as follows:

"That the plaintiff J. F. Redfield acquiesced in Catherine C. Redfield assuming said relationship of trustee of said funds, acquiesced and knew of her expenditures in the handling of said funds, and acquiesced in all of her acts and doings concerning the said fund, and the entire fund, as represented by the order of the court and judgment in said probate cause No. 35674, to wit, the sum of $888.72, was expended by the said Catherine C. Redfield and her husband J. F. Redfield, which community used it for community purposes and the said community benefited to that extent."

After the death of Michael J. Carey, a creditor applied for, and was granted, letters of administration upon his estate. The administrator reported to the court that he was unable to find any property belonging to the estate other than a sum of money insufficient in amount to pay the costs of administration and the funeral expenses of the deceased. On these facts appearing, the court, after directing that the money on hand be applied to these purposes, entered an order discharging the administrator and closing the estate.

On the discovery that the appellant wife had misappropriated moneys in her hands, the sisters of the appellant wife brought an action against her to recover their interests in the money. Issue was taken on their complaint and a trial entered upon. After the plaintiffs had introduced evidence sufficient to

indicate the nature of the action, the trial judge stated to counsel for the plaintiffs that, in his opinion, the action could not be maintained in that form; that the proper proceeding was to apply to the probate side of the court for an administrator *de bonis non,* and question the right of the defendant to funds in that proceeding. The plaintiffs thereupon took a voluntary nonsuit and dismissed their action. The appellants pleaded these proceedings as *res adjudicata* of the present action, and assign error on the holding of the court that it was not such.

We cannot conclude there was error in the holding. Possibly, the court before whom the action was pending was mistaken in its views, but the plaintiffs were not bound for that reason to press the action to a final conclusion and seek relief through the appellate court. It was their privilege to take a voluntary nonsuit, and their action in that behalf did not constitute a bar to any subsequent proceedings on the same cause of action. It was not a judgment on the merits of the cause of action; it was at most but a confession that they had mistaken their remedy.

We find no error in the record, and the judgment appealed from will stand affirmed.

MITCHELL, C. J., MAIN, and HOLCOMB, JJ., concur.